55    529
61    463

## THE LUMBERVILLE DELAWARE BRIDGE COMPANY v. THE STATE BOARD OF ASSESSORS.

1. The federal constitution will not-invalidate a state tax imposed upon domestic corporations, generally, because it incidentally affects one that under state authority is engaging in interstate commerce.

2. The yearly license fee imposed upon miscellaneous corporations under the act of April 18th, 1884 (*Rev. Sup.*, p. 1016), is levied upon the right of the company to exist in corporate form, without regard to the powers that under such form it may exercise; such a fee may be exacted by the state from which the right is derived, without reference to the nature of the business the corporation may be authorized to carry on, and is constitutional even as against a domestic corporation created for the purpose of engaging in commerce with an adjoining state.

3. The right of corporate existence is in its nature indivisible, and the fee therefor must necessarily be an entirety, no matter where the property of the company is situated or how its capital is invested or employed.

On *certiorari.*

The following state of facts is agreed upon for the purpose of the argument of the above-stated cause:

*First.* It is admitted by the compact between New Jersey and Pennsylvania, dated May 27th 1783 (*Nix. Dig., p.* 967), it is declared that the river Delaware, from the northwest corner of New Jersey to the circular boundary of the State of Delaware, in the whole length and breadth thereof, is, and shall continue to be and remain, a common highway, equally free and open for the use, benefit and advantage of the contracting parties, and that each state shall enjoy and exercise a concurring jurisdiction within and upon the water between the shores of said river.

*Second.* It is admitted that the Lumberville Delaware Bridge Company was incorporated by the concurrent legislation of said states, viz., by an act of the legislature of the State of Pennsylvania entitled "An act to incorporate the Lumberville Delaware Bridge Company," approved April 7th, 1835 (*Pamph. L. Penna.* 1834–5, *p.* 114), and by an act of the legislature of the State of New Jersey, entitled "An act to incorporate the Lumberville Delaware Bridge Company," passed February 12th, 1836. *Pamph. L., p.* 79.

*Third.* It is admitted that the incorporators duly organized, built, erected and constructed a bridge across the river Delaware, from shore to shore between said states, at or near Lumberville, in the county of Bucks and State of Pennsylvania, and erected its toll-gates on the westerly bank of said river, and has always demanded and collected all tolls thereat.

*Fourth.* It is admitted that the president and treasurer of said company are residents of the State of Pennsylvania, and the secretary thereof is a resident of New Jersey, and that all meetings of said company are held at the office of said company established at Lumberville, Pennsylvania.

*Fifth.* It is admitted that the prosecutors pay annually to the authorities of New Jersey taxes on one-half of said bridge, including the abutments and piers to the centre of the river upon the New Jersey side as part of the structure, without reference to the extent of travel upon it or the profits derived therefrom; and that the prosecutors pay annually to the authorities of the State of Pennsylvania one-half of the taxes

assessed under and by virtue of the acts of the legislature of said state, passed June 7th, 1879, and June 1st, 1889.

*Sixth.* It is admitted that the prosecutors have paid to the State of New Jersey, under protest, all taxes assessed against it under and by virtue of the act entitled "An act to provide for the imposition of state taxes upon certain corporations and for the collection thereof," approved April 8th, 1884, and the several supplements thereto.

*Seventh.* It is admitted that the State of Pennsylvania has never concurred in the passage of the last-mentioned act.

*Eighth.* It is agreed that either party may refer to all laws, agreements, documents or papers made or passed by either state in reference thereto.

WM. S. GUMMERE,
*Attorney for prosecutors.*

JOHN P. STOCKTON,
    *Attorney-General.*

The following are the reasons relied upon :

*First.* Because the said tax or impost is a tax upon interstate commerce and in violation of the constitution of the United States.

*Second.* Because the said Lumberville Delaware Bridge Company is not incorporated under the laws of the State of New Jersey, within the meaning of the terms of the act entitled "An act to provide for the imposition of state taxes upon certain corporations and for the collection thereof," approved April 18th, 1884, and the several supplements thereto, passed by the legislature of the State of New Jersey.

*Third.* Because, upon the principles of public law, it is clear that the power of erecting a bridge and taking tolls thereon, over a navigable river which forms the coterminous boundary between two states, can only be conferred by the concurrent legislation of both states; and such charters are subject to alteration, amendment or repeal by like concurrent legislation only.

*Fourth.* Because the legislature of the State of New Jersey cannot impose a tax by way of a license fee, upon a foreign corporation or its franchises carrying on its business or any part thereof without the jurisdiction of the State of New Jersey.

*Fifth.* Because the assessment was made upon an erroneous principle; that is to say, it was measured by the amount of its capital stock issued by the laws of the State of Pennsylvania, as well as the amount thereof issued by virtue of the laws of the State of New Jersey, whereas it should have been measured by one-half of the total amount of its capital stock issued and outstanding.

*Sixth.* Because the act of April 18th, 1884, and the supplements do not authorize the imposition of any tax by way of license fee or otherwise upon foreign corporations; it only applies to domestic corporations.

*Seventh.* Because the said corporation is a foreign corporation and demands and receives all tolls at its gates erected and maintained within the jurisdiction of the State of Pennsylvania.

*Eighth.* Because the title of the act of April 18th, 1884, and supplements does not embrace foreign corporations, and if it did, the same would be void for duplicity.

*Ninth.* Because the said assessments are, in divers other respects, uncertain, erroneous and illegal, and ought to be set aside and reversed.

Argued at February Term, 1893, before Justices VAN SYCKEL and GARRISON.

For the prosecutor, *W. S. Gummere.*

For the defendant, *William Y. Johnson.*

The opinion of the court was delivered by

GARRISON, J.   The Lumberville Delaware Bridge Company, a corporation created in 1836, by the legislature of this

state, resists the payment of the license fee imposed under the fourth section of "An act to provide for the imposition of state taxes upon certain corporations and for the collection thereof." *Pamph. L.* 1884, *p.* 232.

The pertinent provision of this section is in these words : "All other corporations incorporated under the laws of this state and not hereinbefore provided for shall pay a yearly license fee or tax of one-tenth of one per cent. on the amount of the capital stock of such corporations."

The first ground of opposition is that the imposition of this tax upon the prosecutor is a burden upon, and hence a regulation of, commerce between the states, in violation of the exclusive jurisdiction of the federal congress.

It is not questioned that the power to regulate commerce between the states has been by the constitution of the United States committed exclusively to congress, and it is furthermore established that the omission of congress to legislate with reference to the matter thus committed to it implies not that the states may legislate with respect thereto, but that commerce shall be free from all statutory regulations until congress sees fit to impose them. *Robbins* v. *Shelby County,* 120 *U. S.* 489, and cases there cited.

It is also established law that no state has the right to lay any impost upon interstate commerce in any form, whether by way of duties upon the subject of transportation or by way of license fee imposed upon the occupation or business of carrying it on.

These doctrines, while they secure to congress the exclusive right to make laws having for their object the control of commerce among the states and the regulation of any and all of the incidents of that commerce, do not invalidate state laws otherwise legitimate merely because they casually affect interstate commerce.

In *Robbins* v. *Shelby County, supra,* Mr. Justice Bradley, speaking of the exclusive right of congress to make express regulations for interstate commerce, says : " It is also an established principle, as already indicated, that the only way

in which commerce between the states can be legitimately affected by state laws is when, by virtue of its police power and its jurisdiction over persons and property within its limits, a state provides for the security of the lives, limbs, health and comfort of persons and the protection of property, or when it does those things which may otherwise incidentally affect commerce, such as the establishment and regulation of highways, canals, railroads, wharves, ferries and other commercial facilities, and the imposition of taxes upon persons residing within the state or belonging to its population. * * * But, in making such internal regulations, no discrimination can be made adversely to the persons or property of other states, and no regulation can be made directly affecting interstate commerce."

And in *Leloup* v. *Mobile*, 127 *U. S.* 648, the same judge again says : "We may here repeat what we have so often said before, that this exemption of interstate and foreign commerce from state regulation does not prevent the state from taxing the property of those engaged in such commerce located within the state as the property of other citizens is taxed, nor from regulating matters of local concern which may incidentally affect commerce, as wharfage, pilotage and the like."

Numerous decisions illustrate the application of these principles by the highest federal court and serve to elucidate their meaning. The cases in which state legislation has been set aside as an unwarrantable regulation of commerce fall naturally into the following groups :

1. Those in which the state law has made discriminations adversely to other states. *Guy* v. *Baltimore*, 100 *U. S.* 434 ; *Webber* v. *Virginia*, 103 *Id.* 344 ; *Walling* v. *Michigan*, 116 *Id.* 446 ; *Asher* v. *Texas*, 128 *Id.* 129 ; *Stoutenburgh* v. *Hennick*, 129 *Id.* 141.

2. Those in which the impost was upon the subject of transportation. *The State Freight Tax*, 82 *U. S.* 232 ; *Railroad Company* v. *Husen*, 95 *Id.* 465 ; *Cook* v. *Pennsylvania*, 97 *Id.* 566 ; *Brown* v. *Houston*, 114 *Id.* 622 ; *Lyng* v. *Michigan*, 135 *Id.* 161.

3. Those in which the state tax was in effect a tax upon, the business engaged in interstate commerce, because imposed, upon its agencies. *Robbins* v. *Shelby County*, 120 *U. S.* 489 ;. *McCall* v. *California*, 136 *Id.* 104 ; *Norfolk W. R. Co.* v. *Pennsylvania*, *Id.* 115 ; *Crutcher* v. *Kentucky*, 141 *Id.* 47. Its earnings : *Fargo* v. *Michigan*, 121 *Id.* 230 ; *Philadelphia S. S.* '*Co.* v. *Pennsylvania*, 122 *Id.* 326. Its methods : *Moran* v. *New Orleans*, 112 *Id.* 69 ; *Pickard* v. *Pullman Southern Car Co.*, 117 *Id.* 34. Or directly upon its business : *Pensacola Telegraph Co.* v. *Western Union Telegraph Co.*, 96 *Id.* 1 ; *Western Union Telegraph Co.* v. *Texas*, 105 *Id.* 460 ; *Wabash, St. Louis and Pacific Railway Co.* v. *Illinois*, 118 *Id.* 557 ; *Western Union Telegraph Co.* v. *Pendleton*, 122 *Id.* 347 ; *Ratterman* v. *Western Union Telegraph Co.*, 127 *Id.* 411 ; *Leloup* v. *Mobile*, *Id.* 640.

Upon the other hand, state legislation has been upheld, notwithstanding commerce was incidentally affected thereby. In respect to the licensing of ferries : *Wiggins Ferry Co.* v. *East St. Louis*, 107 *U. S.* 365 ; *Maine* v. *Grand Trunk Railway Co.*, 142 *Id.* 217. The imposition of fees for wharfage : *Packet Company* v. *Keokuk*, 95 *Id.* 80 ; *Packet Company* v. *St. Louis*, 100 *Id.* 428 ; *Packet Company* v. *Catlettsburg*, 105 *Id.* 563 ; *Transportation Company* v. *Parkersburg*, 107 *Id.* 698 ; *Ouachita Packet Co.* v. *Aiken*, 121 *Id.* 444. The taxation of property, including capital stock : *Coe* v. *Errol*, 116 *Id.* 517 ; *Western Union Telegraph Co.* v. *Massachusetts*, 125 *Id.* 530 ; *Pullman Palace Car Co.* v. *Pennsylvania*, 141 *Id.* 18. The taxing of franchises or corporate privileges derived from the state : *Delaware Railroad Tax Case*, 85 *Id.* 206 ; *Maine* v. *Grand Trunk Railway Company*, 142 *Id.* 217 ; *Horn Silver Mining Co.* v. *New York*, 143 *Id.* 305. And in a recent case a state tax upon a general occupation was sustained, notwithstanding the special business taxed consisted in negotiating sales with non-resident merchants. *Ficklen* v. *Shelby*, 145 *U. S.* 1.

In the case of Horn Silver Mining Company *v.* New York this language is used : " The right and privilege, or the franchise, as it may be termed, of being a corporation is of great

value to its members and is considered as property separate and distinct from the property the corporation itself may acquire. According to the law of most states this franchise or privilege of being a corporation is deemed personal property, and is subject to separate taxation. The extent of the tax is a matter purely of state regulation, and any interference with it is beyond the jurisdiction of this court. The objection that it operates as a direct interference with interstate commerce we do not think tenable. The tax is not levied upon articles imported, nor is there any impediment to their importation." The franchise here referred to as property subject to the taxing power is likewise the subject of remark in the case of *Minot* v. *The Philadelphia, Wilmington and Baltimore Railroad Company*, 85 *U. S.* 206 (the Delaware Railroad Tax Case) : " The exercise of the authority which every state possesses to tax its corporations and all their property, real and personal, and their franchises, and to graduate the tax upon the corporations according to their business or income or by the value of their property when this is not done by discriminating against rights held in other states and the tax is not on imports, exports or tonnage or transportation to other states, cannot be regarded as conflicting with any constitutional power of congress. The tax imposed by the act in question affects commerce among the states and impedes the transit of persons and property from one state to another just in the same way and in no other that taxation of any kind necessarily increases the expenses attendant upon the use or possession of the thing taxed. That taxation produces this result of itself constitutes no objection to its constitutionality. As was very justly observed in this court in a recent case (*State Tax on Railway Gross Receipts*, 82 *U. S.* 284) : ' Every tax upon personal property or upon occupations, business or franchises affects more or less the subjects and the operations of commerce. Yet it is not everything that affects commerce that amounts to a regulation of it within the meaning of the constitution.' " This language is quoted not because the word " franchise " is there used in the precise sense to be presently ascribed to it,

but for the purpose of showing that a payment for a state privilege may incidentally affect commerce without being in a constitutional sense a regulation of it.

The franchise that is taxed as property is the privilege enjoyed by a corporation of exercising certain powers derived from the state, whereas the franchise with which we have to do is the right to exist in corporate form without reference to the powers that under such form the company may exercise. This distinction, although formulated by Mr. Justice Field in *Home Insurance Company* v. *New York,* 134 *U. S.* 594, was not strictly adhered to in his subsequent expressions, probably because there was nothing in that case to call for a nice use of terms. In this state we tax each of these so-called franchises. The former, as in the case of the right to own and operate a railroad, is taxed as property having a true value, which it is the duty of the state board to ascertain for the purposes of constitutional assessment. On the other hand, the naked right of existing in corporate form is taxed as in the case before us, not at its true value, as it would have to be if it were property, but at a sum arbitrarily imposed by the legislature as an annual fee, the amount of which is to be computed by reference to the capital of the company as a criterion. It is in short a poll tax levied upon domestic corporations for the right to be. Such a tax is not upon property or assets, and does not in any way concern the nature of the business the company may be authorized to carry on. If the business chance to be one of commercial intercourse with other states, the burden incidental to corporate existence does not, under the federal decisions just cited, constitute a regulation of that commerce.

*Standard Underground Cable Co.* v. *Attorney-General,* 1 *Dick. Ch. Rep.* 270, is not in point; it held merely that the manufacture of an instrument of commerce was not itself commerce.

In *Honduras Company* v. *Board of Assessors,* 25 *Vroom* 278, the license fee under the act of 1884 was held to be constitutionally imposed upon a corporation created by certificate

in 1887 for the purpose of engaging in foreign commerce. That decision is an authority for this. The case of a corporation created by special act prior to 1884 for the express purpose of engaging in interstate commerce does not come under any different rule. The taxing act is general and the yearly fee provided by it falls as an incidental burden upon all miscellaneous corporations alike, without regard to the businesses in which they may be severally engaged. Such a tax is not, in my opinion, open to any constitutional objection.

This determination and the ground upon which it rests, are a sufficient answer to the second, third, fourth, sixth, seventh and eighth reasons filed by the prosecutor, all of which proceed upon the notion that the tax is imposed upon something beside the right of the domestic corporation to exist as such.

There remains for consideration the fifth reason, viz., that if the imposition of the tax be legal, yet it is computed upon erroneous principles. The contention in this respect is, that inasmuch as the erection of the bridge was a joint enterprise, requiring the concurrent legislation of two states, the capital to be taken as the criterion of the license fee should be one-half of the capital the domestic corporation was authorized to have. This argument was in all probability suggested by the decision of this court in *Easton Delaware Bridge Co.* v. *Metz, Collector,* 3 *Vroom* 199. That case has, however, no application. The tax there considered was imposed directly upon the capital and surplus which, so the court held, was intended by the legislature to embrace one-half of an enterprise resting in dual legislation. Since the last amendments of the constitution such a tax is a legal impossibility, and the construction placed by the court upon the legislative intent, with respect to the amount of property to be embraced in the tax, is of no aid in the present case, where the tax is not upon capital or property put to the common use of a domestic and a foreign organization, but is the price the domestic company must pay for the right of corporate life. Such a right is in its nature indivisible and the fee therefor must necessarily be an entirety.

In computing such a fee the board of assessors has no discretion—the legislative mandate is plain and cannot be departed from by the assessors nor modified by the courts.

In *The Evening Journal Association* v. *The State Board of Assessors*, 18 *Vroom* 36, the business in which the capital of the corporation was invested was considered by this court for the purpose of determining whether it was a "manufacturing company" within the meaning of the statute. And in *The Press Printing Company* v. *The State Board of Assessors*, 22 *Vroom* 75, the court, finding that the corporation was, in one sense and as to a distinct part of its capital, a manufacturing company, adopted as the criterion for the ascertainment of the amount of the tax which, under the act of 1881 (*Rev. Sup., p.* 602), the court was required to impose, the capital of the corporation not within the exemption.

In the present case no such questions arise. The tax, therefore, was rightfully computed at one-tenth of one per cent. of the capital stock of the prosecutor, and is in that shape affirmed.