[No. 16506.   Department One.   July 27, 1921.]

THE STATE OF WASHINGTON, *Respondent*, v. FREDERICK S. WILES, *Appellant*.[1]

LICENSES (5)—MOTOR VEHICLES—UNITED STATES MAIL—CONTRACTOR'S LIABILITY. A person under contract with the United States for the transportation of mail to and from the post office and postal stations and depots, wharves and docks of a particular city, who uses his motor truck for the purpose, is subject to the motor vehicle license tax imposed by Laws 1915, p. 385 (as amended by Laws 1919, p. 90), such license tax in no way constituting a direct interference with the free and orderly performance of governmental functions nor with the conduct of government business.

Appeal from a judgment of the superior court for King county, Frater, J., entered January 6, 1921, after

[1]Reported in 199 Pac. 749.

a trial and conviction of operating a motor vehicle without a license. Affirmed.

*Elias A. Wright* and *Sam A. Wright,* for appellant.

*Malcolm Douglas, John D. Carmody,* and *Arthur Schramm, Jr.,* for respondent.

BRIDGES, J.—Appellant was charged by information with unlawfully using and operating a motor truck on the public highways of the county of King, state of Washington, without first obtaining a license therefor, as required by the state laws. He was found guilty, and has appealed from a judgment imposing a fine.

The facts are simple and stipulated, and are as follows: Prior to his arrest appellant had entered into a written contract with the United States government, whereby, for certain considerations, he agreed to carry the United States mail, in the city of Seattle, Washington, between the various depots, wharves, docks, post-office and substations therein. In carrying out his contract with the government, he used various motor trucks, including the one which he is accused of operating without first having obtained a license. These trucks were used by the appellant only in the business of carrying the mail under his contract. They had painted on them the usual insignia of vehicles used for these purposes, including the words "United States Mail". The terms of his contract required him to provide vehicles for the carriage of the mail, and to keep them properly equipped and in repair, and he was required also to furnish all necessary oil, gasoline, tires, upkeep and drivers. The contract further provided that such trucks should be used only in the business of carrying United States mail. At the time of his arrest, the appellant was in the exercise of the duties imposed upon him under his contract.

The 1915 session laws (Laws of 1915, p. 385), as amended by ch. 46, session laws of 1919 (Laws of 1919, p. 90), provide, among other things, that it shall be unlawful to operate automobiles and motor trucks on the public highways of the state without first having obtained a license therefor. The minimum license fee required of a motor truck is $10 per annum, and the fee increases as the weight and capacity of the truck increase. The 1919 act especially exempts "all motor vehicles owned by the United States government, and used exclusively in its service".

Appellant's argument is that the United States government has the constitutional right to carry its mails in any manner it may see fit, and without let or hindrance from any person or state; that in the use of his trucks he was in the performance of a governmental duty; that he was an instrumentality selected by the United States government for the purpose of carrying out and putting into effect its constitutional duty of carrying, delivering and caring for the mail; that such a tax or license fee could not be lawfully imposed on the government itself, if it had owned the trucks and operated them in the performance of the work which appellant was doing, and that since he is doing for the government what it might do for itself, to impose a tax on him would be in fact to impose it on the government, because any private person carrying the mail must require the government to pay him an additional amount equal to any such taxation as he may be required to pay. The principal cases cited by the appellant in support of his argument are the following: *Osborn v. Bank of United States,* 9 Wheat. (U. S.) 738, 6 L. Ed. 204; *McCullough v. State of Maryland,* 4 Wheat. (U. S.) 316; *Williams v. City of Talladaga,* 226 U. S. 404, 57 L. Ed. 275; *Western Union Telegraph Co. v. Texas,* 105 U. S. 460, 26 L.

Ed. 1067; and *Johnson v. State of Maryland,* 254 U. S. 51.

On the other hand, the respondent contends that the license fee is a tax imposed on the right to operate a motor truck on the public highways of the state, and is not a tax imposed on the right to carry the United States mail; that the state has sole control of its roads and highways, and that the agents of the United States are amenable to the reasonable rules and regulations governing the use of such highways; that the immunity of the Federal government from state taxation is not negotiable to the extent that it can transfer that immunity to every person who contracts with it to do any act for the furtherance of governmental business; that the mail contract between an individual and the Federal government does not render the former an essential governmental agent, and confer on him freedom from state control. In support of its argument, respondent cites and relies upon the following, among other cases: *Commonwealth v. Closson,* 229 Mass. 329, 118 N. E. 653, L. R. A. 1918C 939; *Ex parte Marshall,* 75 Fla. 97, 77 South. 869, L. R. A. 1918C 944; *Searight v. Stokes,* 3 How. (U. S.) 151, 11 L. Ed. 537, to which may be added: *Dickey v. Maysville etc. Turnpike Co.,* 7 Dana (Ky.) 113; *Western Union Tel. Co. v. Richmond,* 178 Fed. 310, 56 L. Ed. 710; *Fidelity & Deposit Co. v. Commonwealth of Pennsylvania,* 240 U. S. 319; *Lumberville Delaware Bridge Co. v. State Board of Assessors,* 55 N. J. L. 529, 26 Atl. 711, 25 L. R. A. 134.

The single legal question involved in this case is an interesting one. Although the same question, based upon identical facts, must exist in nearly every state of the Union, we have not been cited to a single case which is directly in point, nor has our independent search resulted in finding one.

We are of the opinion that the judgment appealed from must stand. It is, doubtless, true that the states may not directly tax the property of the Federal government, nor the instrumentalities which it uses to discharge any of its constitutional functions, nor may a state, by taxation or otherwise, materially interfere with the due, expeditious and orderly procedure of that government while in the exercise of its constitutional powers. When it acts within its powers it is supreme, and all the states are subordinate to it. Being supreme, it must maintain its supremacy in order that our form of government shall be and continue to be stable and lasting. It is on this broad principle, as we understand it, that the Federal supreme court has always held that a state may not tax the Federal government or its instrumentalities, or do aught which would directly interfere with its lawful operations, because had the various states such powers they might slowly but surely undermine and weaken its foundations, independence and acknowledged supremacy. It was on these grounds and for these reasons that the United States supreme court held, in the epoch making cases of *McCullough v. Maryland, supra,* and *Osborn v. Bank of United States, supra,* that a state did not have power to directly tax the right of the United States bank to do business in such states. But the law of those cases is not applicable to the facts of this case. In those cases the bank was chartered by the United States, and controlled by Congressional acts as to the manner of doing business. It was the direct issue and immediate instrumentality of the government. Its private property within the state might be taxed like any other property, but for the state to require it to pay a tax for the right to do business was equal to requiring the government itself to pay a tax for the priv-

ilege of performing, within the borders of the state, functions· authorized or imposed on it by the Federal constitution. But the case at bar cannot come within the scope or spirit of those decisions. Here there is no effort to tax the business of carrying the mail. The appellant is not a direct instrumentality of the government; he is a personal contractor, doing certain work for the government, at a fixed compensation. In no sense is he the representative or agent of the government nor an integral part of it. As was said by the Federal supreme court in the case of *Fidelity & Deposit Co. v. Commonwealth of Pennsylvania, supra* (which case we will later notice in more detail):

"But mere contracts between private corporations and the United States do not necessarily render the former essential governmental agencies and confer freedom from state control."

A person building a state road is nothing but a contractor; he is no part of the state or its agencies, and does not thereby inherit the various immunities of the state. There is nothing in appellant's contract which indicates that the government intended to pass its immunities on to him. Under these circumstances it should be presumed that it was the intention that he should be subject to the general laws of the state.

Nor are those cases out of the supreme court of the United States concerning taxation on interstate commerce in point. Such were the cases of *Western Union Tel. Co. v. Texas, supra*, and *Williams v. City of Talladaga, supra*. The state of Texas passed a law imposing taxes on every chartered telegraph company doing business in the state, and each such company was thereby required to pay a tax of one per cent for each full rate message sent and one-half cent for each message the toll for which was less than full rate. The telegraph company was incorporated under the laws

of the state of New York. Many years ago the Congress of the United States passed an act authorizing telegraph companies to place their poles and other apparatus on all government property, reservations and post roads, in consideration of which government messages should have certain preferences in transmission. The Texas act was held unconstitutional in that it undertook to impose a direct tax on messages sent and received by and on behalf of the government, and on interstate messages. The *Williams* case, *supra,* was of like general character. We think it will at once be observed that these cases are not controlling of the case at bar. In discussing a somewhat similar question in the case of *Johnson v. State of Maryland, supra,* cited by the appellant, the court said:

"The cases upon the regulation of interstate commerce cannot be relied upon as furnishing an answer. They deal with the conduct of private persons in matters in which the states as well as the Federal government have an interest, and which would be wholly under the control of the states but for the supervening destination and the ultimate purpose of the acts. Here the question is whether the state can interrupt the acts of the general government itself."

That case is probably more nearly in point here than any of the cases cited by appellant or which we have found. Johnson was an employee of the post-office department of the United States, and while driving a government motor truck in the transportation of mail over certain highways in the state of Maryland, was arrested, convicted and fined for driving such truck without having a personal license as required by the laws of that state. The court stated the question involved to be: "whether the state has power to require such an employee to obtain a license by submitting to an examination concerning his competence, and paying $3, before performing his official duties in obe-

dience to superior command." In determining the matter adversely to the state, the court said:

"It seems to us that the immunity of the instruments of the United States from state control in the performance of their duties extends to a requirement that they desist from performance until they satisfy a state officer, upon examination, that they are competent for a necessary part of them, and pay a fee for permission to go on. Such requirement does not merely touch the government servants remotely by a general rule of conduct; it lays hold of them in their specific attempt to obey orders, and requires qualifications in addition to those that the government has pronounced sufficient. It is the duty of the department to employ persons competent for their work, and that duty it must be presumed has been performed."

There is a wide and fundamental distinction between that case and the one at bar, for in that case the government owned the truck and the person required to pay the fee and obtain the license was its direct employee, engaged in the performance of his duties, while here the person required to pay the license fee was a simple contractor, a resident of the state, the owner and operator of the truck in question and engaged in a work which was to be performed entirely within the state. There the tax was, in effect, directly against the government, while here it is directly on the individual and affects the government only indirectly and incidentally.

In the recent case of *Fidelity & Deposit Co. v. Commonwealth of Pennsylvania, supra,* it was held by the Federal supreme court that a surety company does not by becoming, conformably to an act of Congress, surety on bonds required by the United States, a Federal instrumentality so as to be exempt from a state tax on the premiums received. Mr. Justice McReynolds, speaking for the court in that case said:

"That the challenged tax 'is an exaction for the privilege of doing business' seems plain; and undoubtedly a state may not directly and materially hinder exercise of constitutional powers of the United States by demanding in opposition to the will of Congress that a Federal instrumentality pay a tax for the privilege of performing its functions. But mere contracts between private corporations and the United States do not necessarily render the former essential governmental agencies and confer freedom from state control. Moreover, whatever may be their status, if the pertinent statute discloses the intention of Congress that such corporations, contracting under it with the Federal government, shall not be exempt from state regulation and taxation, they must submit thereto."

If the bonding company in that case was subject to the laws of that state, the appellant in this case ought to be subject to the laws of this state.

In the case of *Commonwealth v. Closson, supra,* it was held that one in charge of a vehicle transporting United States mail is not exempt from the operation of state statutes and municipal ordinances regulating traffic on the highways, although by Federal statutes the highways are post-roads. In that case Closson was arrested for violating a state statute concerning the conduct and operation of motor vehicles on the public highways. He defended on the ground that, being employed as a mail carrier, using a vehicle for the delivery of mail, he was immune from prosecution and punishment under the statute. The court said:

"The designated streets or ways are not, however, instrumentalities created by the general government, where 'exemption from state control is essential to the independent sovereign authority of the United States within the sphere of their delegated powers'. . . . . The facilities thereby afforded for transportation of the mails confer no extraordinary rights upon mail carriers to use the ways as they please, nor do they necessarily or impliedly do away with the

power of supervision and control inherent in the state.''

The case of *Ex parte Marshall, supra,* is an instructive and interesting one. During the world war, a military encampment of United States soldiers was located near Jacksonville, Florida. The officer in charge of that camp made a contract with Marshall, authorizing him to transport by motor bus the soldiers from the camp to the city of Jacksonville, upon certain terms and conditions particularly set out. He was arrested for not complying with a certain state law imposing a license tax somewhat similar to that involved in this case. He defended on the ground that he was engaged in the business of the United States government, and was its constituted agent for the purpose of transporting soldiers. He cited practically the same cases cited by the appellant in this case. Concerning them the court said:

''We are in accord with the holdings of all these cases, . . . but unfortunately for the petitioner, none of them fit the facts of the case in hand. In all of them a license tax was sought to be imposed by a state, county, or municipality, upon the right to do business either by a bank, a railroad company, or telegraph company that had been chartered, and had been granted its franchise and right to do business by the Congress of the United States, and in all of them it was held, in effect, that such a license tax was invalid because it was an unwarranted invasion of rights properly granted by the Federal government, and amounted virtually to an attempt to annul such Federal grant.''

The judgment and sentence were affirmed.

But appellant further contends that to impose the license tax upon him would, in effect, be to impose it upon the Federal government in the transaction of its constitutional functions. This argument, however, proves entirely too much. The appellant admits, and

under like circumstances all the courts have held, that
the state has the right to levy a property tax on motor
trucks owned by him and used in the transportation of
the mail. In making his contract with the government
he, doubtless, took into consideration this tax, and it
would be in effect passed on to the government in
identically the same way that he contends the license
tax must be passed on to the government. We have in
this state a statute which requires every person driv-
ing or operating a motor vehicle to obtain a driver's
license before he will be permitted to operate such ve-
hicle. If the state cannot compel appellant to pay the
motor license tax, for the same reason it cannot compel
him to license his drivers or himself as a driver. We
also have a law in this state imposing a small tax on
each gallon of gasoline sold. This tax is by the gaso-
line companies charged to the consumer, including the
appellant, and, he, doubtless, will, if he should renew
his contract with the government, pass that tax also on
to the government, and if he be exempt from the mo-
tor tax, he is, for the same reason, exempt from the
gasoline tax. Other like illustrations might be given.

While it is true, generally speaking, that a state may
not by its laws hamper and interfere with the free and
orderly performance of governmental functions, by
taxation or otherwise, yet that interference must be
substantial and direct. Every indirect and immaterial
interference with the conduct of government business
is not violative of the principles upon which the Feder-
al government is founded and performs its duties. The
rule of reason must control in all such questions, other-
wise the states will be greatly hampered in the conduct
of their affairs, without any correspondent benefit
flowing to the national government.

We are confident that the appellant is not, because
of the facts of this case, relieved from complying with

the state statute imposing upon him the motor truck license fee. The judgment is affirmed.

Parker, C. J., Mackintosh, Fullerton, and Holcomb, JJ., concur.