UNITED STATES et al. v. CLALLAM COUNTY, WASH.

(District Court, W. D. Washington, N. D. June 28, 1922.)

No. 294E.

Taxation ⬦⚊6—Property owned by United States, through corporation, for war purposes, exempt from state taxation.

The United States Spruce Production Corporation is a corporation organized under the laws of Washington, under powers conferred by Congress to expedite the production of airplanes for war purposes. Its shares are all owned by the United States, and it holds title to property, including a railroad, acquired and built at government cost, but has never been engaged in commercial business or the business of a common

---

carrier and all its activities since the close of the war have been with a view of the winding up of its business. *Held*, that its railroad or other property is not subject to taxation by the state.

In Equity. Suit by the United States and the United States Spruce Production Corporation against Clallam County, Wash. On motion to dismiss bill. Denied.

The bill of complaint alleges, in substance, that pursuant to laws of the United States the President authorized the purchase of spruce and fir lumber, etc., as war material, and the construction of aircraft for use in the army and navy, under the direction of the Chief Signal Officer of the United States Army, also authorized plans for the production for such war material, including the building of railroads; that the President was authorized to purchase, manufacture, maintain, and operate aerial machines, and the acquisition and development of plants and factories and establishments for the manufacture of aeroplanes, etc., and for the purpose of carrying into effect such directions and authority, $640,000,000 was appropriated; that pursuant to congressional authority the President in order to facilitate the production of such war material undertook the construction of certain logging railroads through the agency of the Signal Corps, Advance Section of the United States Army, and later, by the Bureau of Aircraft Production, Spruce Production Division of the United States War Department (the agency through which the power thus vested was exercised and the property in issue acquired); that, pursuant to law, acting through some of the agencies named, the United States entered into a contract for the construction of the railroad referred to, and acquisition for rights of way therefor; that, pursuant to the Act of July 9, 1918, 40 Stat. 888, subc. 16, as amended, the Director of Aircraft Production, for the purpose of facilitating aircraft material, etc., production formed under the laws of the State of Washington the United States Spruce Production Corporation; that all of the shares of stock of said corporation were subscribed for and owned and controlled by the Secretary of War, and are the property of the United States; that the said corporation, since its organization, has been an agency or instrumentality of the United States government for the purpose of carrying out the object and purpose of said act of Congress, and that all the functions of such corporation are exercised by a board of directors named by the government of the United States; that said property was conveyed to the United States Spruce Production Corporation, and that the said corporation went into possession prior to the year 1919; that in the year 1921 the defendants caused to be entered upon the tax rolls for defendant county, for the years 1919, 1920, and 1921, and the property set out for assessment for the respective years; that the defendants claim the property is taxable for the said years and that the said taxes are now due and payable, and have taken steps to collect the same. It is then alleged that the said property is exempt from taxes and that such assessment is illegal and void. The defendants have moved to dismiss on the ground that the United States is not a proper or necessary party, and therefore no diversity of citizenship is present. In harmony with the holding of this court in U. S. v. Sears et al. (no opinion filed), the United States is a proper party. The motion to dismiss is therefore denied. The defendants also take issue with the contention on the merits. Upon the trial the allegations set out in the bill of complaint have been substantially sustained.

Thos. P. Revelle, U. S. Atty., John A. Frater, Asst. U. S. Atty., both of Seattle, Wash., and Charles H. Carey, of Portland, Or., for the United States.

Ellis, Fletcher & Evans, of Tacoma, Wash., and W. B. Ritchie and T. F. Trumbull, both of Port Angeles, Wash., for defendant.

NETERER, District Judge (after stating the facts as above). The railroad in issue was constructed as an instrumentality of the govern-

ment as a war necessity, and was not engaged in commercial business, or the business of a common carrier, and all the activities of the said corporation since the signing of the Armistice have been with the view of winding up its business. The issue, concisely stated, is: Was the plaintiff corporation a mere instrumentality of the United States in carrying forward preparations to facilitate the prosecution of the war, or is it a corporate entity which stripped the interest of the United States of beneficial use, within the purview of the taxation inhibitions of the law?

By the National Defense Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115$^1$/$_{32}$a):

"For the purpose of expanding and coordinating the industrial activities relating to aircraft, or parts of aircraft, produced for any purpose in the United States, and to facilitate generally the development of air service, a board is hereby created to be known as the Aircraft Board. * * *"

Section 3115$^1$/$_{32}$b:

"The board shall * * * include a civilian chairman, the Chief Signal Officer of the Army, and two other officers of the Army, to be appointed by the Secretary of War, the Chief Constructor of the Navy and two other officers of the Navy, to be appointed by the Secretary of the Navy, and two additional civilian members. The chairman and civilian members shall be appointed by the President, by and with the advice and consent of the Senate."

Section 3115$^1$/$_{32}$d:

"The board is hereby empowered, under the direction and control of the * * * Secretary of War * * * to supervise and direct * * * production and manufacture of aircraft. * * *"

By section 3115$^1$/$_{32}$e the board is empowered to employ such clerks and employees as may be necessary, and for the purpose of paying the expenses provided by law $100,000 of an appropriation made for the Signal Corps of the Army is made available. By Act of June 3, 1916, making further provisions for national defense—section 120, p. 213, 39 Stat. (Comp. St. §§ 3115f–3115h)—the President in time of war or when war is imminent is empowered through the head of any department of the government to place with any concern an order for material as may be required, and compliance with such order is made obligatory, and a penalty provided for noncompliance, and by act approved March 4, 1917, 39 Stat. p. 1192, $115,000,000, as may be necessary, was made immediately available for expeditious construction of aircraft, etc. By Act of July 24, 1917, c. 40, § 9, 40 Stat. 245 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 1867n), authority is given to the President for emergency purchase, manufacture, building, etc., of motor vehicles, aviation stations, roads, etc., through the department, and by section 8 of the act (section 1867m) all officers and enlisted men of the temporary forces of the Signal Corps, including the aviation section, are placed on the same footing, as to pay, allowance, and pension, as permanent officers and enlisted men of corresponding grades, and length of service in the regular army. By this act (section 1 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 1867f]) the Signal Corps and Aviation Section are temporarily increased. Clearly

all functions were a public necessity, and for public use, and all property acquired was for such purpose.

At the outset it may be said that the case recently decided by the Supreme Court, Sloan Ship Yard Corporation v. United States Shipping Board Emergency Fleet Corporation, 258 U. S. ——, 42 Sup. Ct. 386, 66 L. Ed. ——, May 1, 1922, has no application. That case had relation to a rule of conduct and responsibility therefor, and held that the agent "does not cease to be answerable for his acts." The issue here is ownership by the United States, or property reserved for public use, and the manner in which it is held would appear to be of little consequence, when the charge against the property is not created by some act of the corporation. Freedom of corporate action or power of control by the Spruce Production Corporation in this case is mere fiction. All of its acts were directed and controlled by the President of the United States through the several departments authorized by the Congress, and the claim is not predicated upon any act of omission or of commission, and the corporation was a mere instrumentality or agency for doing the bidding of the President of the United States. Chicago, Mil. & St. P. Ry. Co. v. Minn. C. Ass'n, 247 U. S. 490, at page 497, 38 Sup. Ct. 553, 62 L. Ed. 1229. Courts will not be blinded by the form of law. Cleveland-Cliffs Iron Co. v. Arctic Iron Co., 261 Fed. 15, 171 C. C. A. 611. The liability asserted is one sought to be imposed by statute, and not one created by contract or tortious act of the corporate entity. The Supreme Court, in Pine Hill Coal Co. v. U. S., 258 U. S. ——, 42 Sup. Ct. 482, 66 L. Ed. ——, decided May 29, 1922, said:

"Liability in any case is not to be imposed upon a government without clear words."

The contention of the defendants that a tax upon the operation or right to function of the corporation has a necessary effect of impairing the power to serve, and is prohibited, but that a local tax upon the property which does not directly affect its operations to function is not prohibited, unless the exception is expressly declared, I do not think can obtain here, in the sense asserted, to the existing facts. The cases cited in support have no application, for the reason that the parties in the cited cases were functioning as common carriers or commercial enterprises, and the interest of the government was an agreement to perform in its behalf and benefit by the parties in emergency of war, or contingency named, on demand; whereas, in the instant case the property is the property of the United States, held in the name of the corporation, and has not been used in other than for war purposes. No question of innocent parties can enter, and the court must disregard the corporate form, for the purpose of justice, to ascertain the right and true relation. U. S. v. Beebe, 127 U. S. 338, at page 344, 8 Sup. Ct. 1083, 32 L. Ed. 121. The relation of the United States to the corporation must be determined by the purpose and act creating it, and the uses to which the property is to be devoted. Chief Justice Marshall in the Dartmouth College Case, 4 Wheat. (17 U. S.) 518, at page 561 (4 L. Ed. 629), held that to determine the character of a corporation the

beneficial purpose for which the property of the corporation is to be used may be considered.

Justice McKenna, for the court, in McCaskill v. U. S., 216 U. S. 504, at page 514, 30 Sup. Ct. 386, at page 391 (54 L. Ed. 590), said:

"Undoubtedly a corporation is in law a person or entity entirely distinct from its stockholders and officers."

And on page 515 of 216 U. S., on page 391 of 30 Sup. Ct. (54 L. Ed. 590), says:

"A growing tendency is therefore exhibited in the courts to look beyond the corporate form to the purpose of it, and to the officers who are identified with that purpose."

The object and manner and purpose of organization and operation are conclusively established to be to expedite efficiency in the production of aircraft, etc., material for war purposes, and when it is determined that the property is held for a public purpose the right of exemption applies. Section 4, subd. 2, Enabling Act, and article 26 of the Constitution of Washington provide:

"That no taxes shall be imposed by the state on land or property therein belonging to, or which may be hereafter purchased by the United States, or reserved for use."

This is conceded to be declaratory of the rule. In McCulloch v. Maryland, 4 Wheat. (17 U. S.) 316, 4 L. Ed. 579, in substance it was held that neither the property of the United States, nor any instrumentality in carrying forward its lawful powers may be taxed by a state, and this rule has not been departed from. In Page v. Pierce County, 25 Wash. 6, 64 Pac. 801, the state Supreme Court held that the state may not tax land in which the United States retains the right of control, and this was not changed in State v. Wiles, 116 Wash. 387, 199 Pac. 749, 18 A. L. R. 1163, where the defendant was rendering a service to the United States by carrying mail, for which service he used a truck, of which he was owner. This truck was clearly not within the exemption provision any more than would be all vessels or trains carrying United States mail. The defendant was under contract with the United States to carry mail. In the instant case the corporation was not under contract to perform for the United States, but the United States was acting in its own behalf through the Spruce Corporation, as a facility to expedite efficiency, and the corporation as an entity did not function in the sense of having freedom of action or power of control.

The issue has been presented with masterful ability, and the research of counsel has, I think, exhausted the subject. An examination of all the cases, the constitutional provisions of the state, and the rule conceded applicable to government property considered, leads to the conclusion that the property is exempt from taxation. No case has been presented, nor have I found one, where the property of the government, administered through a corporation in executing a wholly federal employment, is subject to taxation. In the instant case the property itself is also the only means and instrumentality by which the purpose and employment could be carried out, and to tax it would be to destroy it.