## MOODY, Tax Collector, v. LOUWEIN.
### (No. 3460.)

Court of Civil Appeals of Texas. Texarkana.
Dec. 17, 1927.

Rehearing Denied Dec. 22, 1927.

1. Licenses ⊂⇒19(3)—One carrying mail under contract permitting use of trucks, hired or borrowed, may not claim exemption from state motor registration tax; "under direction of federal government" (Rev. St. 1925, arts. 6675, 6676).

One transporting mail for federal government under contract by which he is not required to own his own trucks, but may hire or borrow them, may not claim exemption from motor vehicle registration fees, under Rev. St. 1925, arts. 6675, 6676, on ground that vehicles are owned under direction of federal government.

2. Licenses ⊂⇒19(3)—Exemption from registration tax of motor vehicles, owned and operated "under direction of federal government," applies only to government owned vehicles (Rev. St. 1925, arts. 6675, 6676).

Rev. St. 1925, arts. 6675, 6676, requiring registration of motor vehicles and exempting motor vehicles "owned and operated under the direction of, and exclusively in the official service of, the United States government," exempts only motor vehicles owned by government, and not those owned or possessed by persons occupying merely a contractual relation with government.

3. Licenses ⊂⇒19(3)—Owner operating trucks under contract for transportation of mails held not entitled to exemption of vehicles from state registration fees (Rev. St. 1925, arts. 6675, 6676).

One owning and operating trucks under contract with federal government for transporting mail *held* not entitled to exemption from statutory registration fees of state, under Rev. St. 1925, arts. 6675, 6676, exempting "motor vehicles owned by and operated under the direction of, and exclusively in the official service of, the United States government."

4. Licenses ⊂⇒5—One owning and operating trucks for transportation of mail held not entitled to have vehicles exempted from state registration tax as "government instrumentalities" (Rev. St. 1925, arts. 6675, 6676).

One owning and operating trucks under contract with federal government for transportation of mail *held* not entitled to have trucks exempted from state motor vehicle registration tax, under Rev. St. 1925, arts. 6675, 6676, on ground that trucks were immune from state taxation as agencies and instrumentalities of United States government.

Appeal from District Court, Harris County; Charles E. Ashe, Judge.

Suit by A. C. Louwein against Dan M. Moody, Tax Collector. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

By the terms of article 6675, R. S. 1925, every owner of a motor vehicle is required to "annually file in the office of the county tax collector of the county in which he resides or in which the vehicle to be registered is being operated, an application for the registration" of such vehicle. By the terms of the same article the county tax collector is enjoined not to issue a license to any person "until such application has been filled out in full and signed by the applicant, and until the requisite fee for the number of unexpired quarters for the calendar year is paid." Article 6676 of said statutes is as follows:

"Road rollers and other building equipment owned and operated by municipalities, counties or subdivisions of counties; street sprinklers, fire engines or apparatus, patrol wagons, ambulances owned by municipalities or counties; and motor vehicles owned and operated under the direction of and exclusively in the official service of the United States government, state of Texas, or any county or city thereof, shall not be required to pay the fees herein required for motor vehicles, but application shall be made for and a registration number and distinguishing seal secured for such motor vehicles."

This suit by appellee, A. C. Louwein, against appellant, Dan M. Moody, was for a writ of mandamus to compel appellant, as the county tax collector of Harris county, to issue and deliver to appellee registration numbers provided for in the statute referred to, without requiring him first to pay the fee prescribed therefor. The appeal is from a judgment directing the issuance of the writ as prayed for by appellee.

It appears in the record sent to this court that for $20,400 to be paid to him appellee contracted with the federal government to transport the mails on route No. 450005, in the city of Houston, for a period of 4 years from July 1, 1926, and that, owning the trucks and having complied with terms of the contract requiring him to have them painted and marked in a way specified, he was using them in the performance of his undertaking. It appears, further, that by the terms of the contract the trucks could be used for no other purpose than to transport the mails, and that they were "operated [quoting] under the direction and exclusively in the official service of the United States government." It appears, further, that by the terms of the contract appellee was to furnish drivers for the trucks, who were to wear uniforms as specified, and also was to furnish the oil, grease, gasoline, etc., necessary in the operation of the vehicles.

Claude Pollard, Atty. Gen., D. A. Simmons, Asst. Atty. Gen., and R. W. Adams, Jr., Asst. Dist. Atty., of Houston, for appellant.

Boyles, Brown & Scott, of Houston, for appellee.

---

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

WILLSON, C. J. (after stating the facts as above). Appellee contended in the court below, and in support of the judgment contends here, that he was entitled to demand and receive registration numbers for his trucks without paying the statutory fees therefor, because, he says, they were owned and operated by him "under the direction and exclusively in the official service of the United States government" and therefore were within the exemption provided for in article 6676 set out in the statement above.

It is insisted in support of the contention that whereas the statute (article 6676) requires the road rollers, fire engines, etc., specified therein, to be owned *by* counties, cities, or towns, it requires motor vehicles like those in question here to be owned *under the direction of* (not *by)* one of the governments specified; and it is insisted that appellee's trucks were within the exemption declared in the statute because, it is asserted, he owned them under the direction of the federal government.

[1] It is clear from the record that a compliance with the contract required appellee to *operate* the trucks under the direction of the federal government, but appellee has not pointed out and we have not found anything in the record showing that he was required to *own* the trucks. If he need not have owned, but might have hired or borrowed them, certainly, he has no right to claim his ownership of the trucks was under the direction of the federal government.

[2, 3] But we do not think it should be held that appellee's trucks were exempt by force of the statute, even if it appeared he owned them *under the direction of the United States government.* While the statute is ambiguous, in that it is not entirely clear from its language to whom the vehicles must belong to be exempt, we think it nevertheless reasonably appears, when articles 6675 and 6676 are read together and all the provisions thereof are kept in mind, that the intention of the Legislature was to exempt only motor vehicles owned by one of the governments mentioned, and not to exempt motor vehicles owned or possessed by persons occupying, as appellee did, a merely contractual relationship to such government. That such was the intention of the Legislature is placed beyond doubt if the word "by" is supplied, as we think it should be (36 Cyc. 1127), so as to make the clause in question read:

"* * * . Motor vehicles owned by and operated under the direction of and exclusively in the official service of the United States government," etc.

[4] Another contention, urged by appellee in support of the judgment, is that he and his trucks were "agencies and instrumentalities [quoting] of the United States government," and therefore "immune [quoting further] from taxation by the state for using the streets and highways in the city of Houston." A like contention on a state of facts not materially different (it seems) from the facts of this case was overruled by the Supreme Court of Washington in State v. Wiles, 116 Wash. 387, 199 P. 749, 18 A. L. R. 1163. It appears from its opinion that in reaching the conclusion it did reach the Washington court considered nearly all the authorities respectively relied upon by the parties to this appeal. We agree with that court as to the meaning and effect of those authorities and will not discuss them here, for to do so would be merely to repeat what that court said. But we will quote as follows from the opinion referred to:

"It is doubtless true that the states may not directly tax the property of the federal government, or the instrumentalities which it uses to discharge any of its constitutional functions, nor may a state, by taxation or otherwise, materially interfere with the due, expeditious, and orderly procedure of that government while in the exercise of its constitutional powers. When it acts within its powers it is supreme, and all the states are subordinate to it. Being supreme, it must maintain its supremacy in order that our form of government shall continue to be stable and lasting. It is on this broad principle, as we understand it, that the federal Supreme Court has always held that a state may not tax the federal government or its instrumentalities, or do aught which would directly interfere with its lawful operations, because, had the various states such powers, they might slowly, but surely, undermine and weaken its foundations, independence, and acknowledged supremacy. It was on' these grounds and for these reasons that the United States Supreme Court *held,* in the epoch making cases of McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579, and Osborn v. Bank of United States, 9 Wheat. 738, 6 L. Ed. 204, that a state did not have power to directly tax the right of the United States Bank to do business in such states.

"But the law of those cases is not applicable to the facts of this case. In those cases the bank was chartered by the United States, and controlled by congressional acts as to the manner of doing business. It was the direct issue and immediate instrumentality of the government. Its private property within the state might be taxed like any other property, but for the state to require it to pay a tax for the right to do business was equal to requiring the government itself to pay a tax for the privilege of performing, within the borders of the state, functions authorized or imposed on it by the federal Constitution. But the case at bar cannot come within the scope or spirit of those decisions. Here there is no effort to tax the business of carrying the mail. The appellant [Wiles] is not a direct instrumentality of the government; he is a personal contractor, doing certain work for the government, at a fixed compensation. In no sense is he the representative or agent of the government, or an integral part of it. As was said by the federal Supreme Court in the case of Fidelity & D. Co. v. Pennsylvania, 240 U. S. 319, 36 S. Ct. 298, 60 L. Ed. 664 * * * : 'But mere contracts

between private corporations and the United States do not necessarily render the former essential governmental agencies and confer freedom from state control.' "

The Washington court did not refer to Choctaw, Oklahoma & Gulf R. R. Co. v. Harrison, 235 U. S. 292, 35 S. Ct. 27, 59 L. Ed. 234, nor to Indian Territory Illuminating Oil Co. v. State of Oklahoma, 240 U. S. 522, 36 S. Ct. 453, 60 L. Ed. 779, which, appellee insists, strongly support his view of the law applicable to the facts of his case and greatly weaken the Wiles Case as authority. In the Harrison Case the court thought the tax on the gross sales of coal taken by the railroad company as lessee thereof (in conformity to authority conferred by an act of Congress) from lands belonging to Indians was, in effect, an occupation tax, which, it was held, the railroad company could not lawfully be subjected to, because as such lessee it was an instrumentality of the federal government in discharging duty it owed the Indians. The case is not like this one. Appellee reasonably could not claim that the fee prescribed for the registration numbers and license was a tax on him as a mail contractor. And he makes no such claim, but, on the contrary, declares in his brief that "he is not contending that the registration fee is an occupation tax." As we understand it, the oil company case was not any more like this one than the Harrison Case was. The question there (in the oil company case) was one as to whether an oil and gas lease on lands belonging to Indians, owned by an assignee, was taxable by the state of Oklahoma. It was held (on the authority of the Harrison Case, it seems) that the Indian lands were under the protection of the federal government, and that, for that reason, the leases were not taxable.

We think it appeared that appellee was not entitled to the relief he prayed for. Therefore the judgment will be reversed and judgment will be here rendered that he take nothing by his suit, and in appellant's favor for costs.