[No. 9546.   In Bank. — February 25, 1886.]

ALEXANDER THOMPSON, RESPONDENT, *v.* DOAK-
    SUM, SENIOR, ET AL., APPELLANTS.

INDIAN LANDS — POWER OF CONGRESS OVER. — Congress has the exclusive
right of pre-emption to all Indian lands lying within the territories of the
United States.

ID. — LANDS IN CALIFORNIA — OCCUPANCY BY INDIANS — TREATY OF GUA-
DALUPE HIDALGO — PRESENTATION OF CLAIM TO LAND COMMISSIONERS.
— Lands in California in the occupancy of Indian tribes at the date of
the treaty of Guadalupe Hidalgo became a part of the public domain,
and subject to pre-emption, if no claim therefor was presented by the oc-
cupants to the land commissioners appointed under the act of Congress
of March 3, 1851, within two years after the date of the act.

PUBLIC LAND — PATENT — COLLATERAL ATTACK ON — TITLE — EVIDENCE. —
A patent from the United States to public land is conclusive evidence
of title in the patentee, in any collateral attack thereon, as against those
not connecting themselves with the government title.

ID. — PRE-EMPTION — AGREEMENT FOR CONVEYANCE. — An agreement by a
pre-emptor of public land to convey the same when he should thereafter
procure a patent is void, and cannot be enforced at law or in equity.

ESTOPPEL — EFFECT OF — CONTRACT. — An estoppel *in pais* can have no more
force or effect in binding the parties than would a contract including the
subject-matter urged by way of estoppel.

APPEAL from a judgment of the Superior Court of
Plumas County.

The facts relied upon by the defendants as an estoppel
were, that on the 26th of September, 1870, one Seagraves,
a justice of the peace, believing himself to be authorized
by law so to do, went to the land claimed by Blunt, and
with his consent, and that of the defendants, set off a
portion thereof for the use of the latter; that Blunt
thereupon agreed with the defendants that whenever he
should procure a government title to the lands, he would
deed the tract so set apart to the defendants, and executed
a written memorandum to that effect.   The further facts
are stated in the opinion.

*J. D. Goodwin,* and *D. W. Jenks,* for Appellants.

*R. H. F. Variel,* for Respondent.

SEARLS, C.—Action to quiet title to a tract of land in Plumas County.

Plaintiff had judgment, and defendants appeal.

On the thirtieth day of July, 1878, one D. D. Blunt received from the government of the United States a patent for the land in question, under a homestead filing made in 1873, and the title thus acquired is vested in the plaintiff.

The bill of exceptions shows that at the trial defendants offered evidence tending to prove the allegations of their answer numbered 4th, 5th, 6th, and 7th, to which plaintiff objected, which objection was sustained by the court, upon the ground that said allegations were, and any evidence tending to prove them was, immaterial, and this ruling is assigned as error.

Defendants are Indians, belonging to a tribe generally known as the Big Meadows tribe, and called in their own language as the Nahkomas.

The allegations of the answer sought to be sustained by the testimony offered are, in substance and effect, that, at a time unknown to defendants, but which they are informed and believe, and therefore allege, was prior to October 1, A. D. 1492, said lands being vacant, unoccupied, and unclaimed, the ancestors and predecessors of defendants discovered, entered upon, claimed, and occupied said tract of land, and built their dwellings thereon, and that ever since said date defendants and their said ancestors and predecessors have continuously owned, claimed, and occupied said land, and used the same for a village site and burial-place, and for supplies of water, fuel, etc., according to the customs and necessities of their people; that the right thus acquired has never been ceded, sold, granted, transferred, or relinquished to any nation, government, state, or individual, but remains to them by right of discovery and occupation.

That no treaty has ever been made by them with any state or government, for their support, maintenance, or

education, and no proceedings have ever been had by which their title to said land has been extinguished.

The right or title attempted to be set up by appellants has the merit of age, if no other.

The relation of the Indians to the lands they occupied, their title thereto, their power of alienation, and the mode of its accomplishment were questions much discussed in the earlier days of our government.

On the discovery of America, the leading nations of Europe eagerly sought a foothold upon its soil, and each sought to appropriate all it could discover and occupy.

Its great extent afforded an ample field to the ambition and enterprise of all. To avoid conflicting settlements and consequent war with each other, the principle was established that discovery gave title to the government by whose subjects or by whose authority it was made, against all other European governments, which title might be consummated by possession.

The relations between the discoverer and the natives were to be regulated by themselves.

These relations were to be settled upon the basis of ownership of the soil by the discoverer, with the right of occupancy in the original inhabitants. So long as they remained at peace with the superior race, they were entitled to be protected in their occupancy, but to be deemed incapable of transferring the absolute title to any other than the sovereign of the country.

Congress has the exclusive right of pre-emption to all Indian lands lying within the territories of the United States. (*Johnson* v. *McIntosh*, 8 Wheat. 543; *Fletcher* v. *Peck*, 6 Cranch, 142.)

The United States own the soil, as well as the jurisdiction, of the immense tracts of unpatented lands included within their territories, and of all the productive funds which those lands may hereafter create.

The title is in the United States by the treaty of peace with Great Britain, and by subsequent cessions from

France and Spain, and by cessions from the individual states; and the Indians have only a right of occupancy, and the United States possess the legal title subject to that occupany, and with an absolute and exclusive right to extinguish the Indian title of occupancy either by conquest or purchase.   (1 Kent's Com. 257.)

The *status* of the Indian and his relation to the land by him occupied have received careful consideration at the hands of Chancellor Kent; and his views as expressed in the third volume of his Commentaries, pages 379 to 400, threw much light upon the question under discussion.

It seems, however, unnecessary to discuss the several propositions involved in the foregoing authorities.

The subject in the present case is confined to a narrower limit.

The title to land is dependent entirely upon the law of the nation in which it lies.

Under the English law, the king was the original proprietor or lord paramount of all the land within the kingdom, and the sole source of title.

We have adopted the same principle and applied it to our republican government, and the doctrine with us is settled beyond a peradventure that valid individual title to land within the United States is derived from the grant of our own local governments, or from that of the United States, or from the predecessors of our government.

The lands within the territorial limits of the state of California were ceded to our general government by the republic of Mexico under the treaty of Guadalupe Hidalgo of February 2, 1848.

By that treaty the United States became vested with the title to all the lands in California not held in private ownership by a legal or equitable title.

By the law of nations, private rights were sacred and inviolable, and the obligation passed to the new government to protect and maintain them.

The term "property" as applied to lands embraces all titles, legal or equitable, perfect or imperfect. (*Teschemacher* v. *Thompson*, 18 Cal. 12; S. C., 79 Am. Dec. 151.)

The treaty operated as a confirmation *in præsenti* of all perfect titles to lands in California held under Spanish or Mexican grants. (*Minturn* v. *Brower*, 24 Cal. 644.)

In the cases of inchoate title,—cases where an equity only vested in the claimant,—the legal title passed to the United States, which held it subject to the trust imposed by the treaty and equities of the grantee.

The execution of this trust was a political power, to be exercised in such manner as the government might deem expedient. (*Leese* v. *Clark*, 18 Cal. 535.)

The United States, for the purpose of discharging the obligation resting upon it under the treaty with Mexico, through Congress, the repository of its political power, at the second session of the thirty-first Congress, passed an act to ascertain and settle the private land claims in the state of California.

Under that act a commission was created, for the purpose of hearing and determining the validity of claims to land within the state.

The thirteenth section of the act provided "that all lands the claims to which have been finally rejected by the commissioners in manner herein provided, or which shall be finally decided to be invalid by the District or Supreme Court, *and all lands* the claims to which shall not have been presented to the commissioners within two years after the date of this act (March 3, 1851), shall be deemed held and considered as a part of the public domain of the United States.

There is no pretense that the claim set up by defendants in their answer was ever presented to the commissioners under this act of Congress; and when the time for such presentation expired, the land in question must be deemed and taken as having become a part of the public domain.

Again, the patent to plaintiff's grantor is to be taken as conclvsive evidence of title in the grantee, as against those not connecting themselves with the government title, in any collateral attack thereon.

If defendants had any right to the land, it should have been asserted in the land department, pending the application for patent, or by direct proceeding on the part of the government to set aside the patent.

There was no error in the refusal of the court to admit the testimony offered.

The second point made by defendant is, that plaintiff is estopped by the agreement of his grantor set out in the findings, and of which he had notice at the date of his purchase.

It appears that Blunt, the grantor of plaintiff, had filed in the proper United States land-office, in the spring of 1870, his declaratory statement claiming the land in question under the pre-emption laws of the United States, and had received a certificate of pre-emption therefor.

That in September, 1870, the agreement set out in the findings was entered into; that thereafter, and some time in 1873, said Blunt changed his pre-emption filing in the Marysville land-office to a homestead filing upon the same premises made in the Susanville land-office, in which district the lands were then situate, and that afterwards, in due time, and in 1878, he made the requisite proof, and on the thirtieth day of July, 1878, received a United States patent under his homestead application.

If we accord to the novel proceeding had before the justice all that can possibly be claimed for it, viz., that it amounted to a contract on the part of Blunt to convey to defendants when he should thereafter procure a patent, it can avail nothing, as such an agreement by a pre-emptor is void, and cannot be enforced at law or in equity. (*Huston* v. *Walker*, 47 Cal. 484; *Damrell* v. *Meyer*, 40 Cal. 166.)

An estopped *in pais* can have no more force or effect

in binding the parties than would a contract including the very subject-matter urged by way of estoppel.

The findings support the conclusion reached by the court below, and the judgment should be affirmed.

FOOTE, C., and BELCHER, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment is affirmed.

ROSS J., concurring.—I concur in the judgment, on the ground that whatever right, if any, the defendants have to the land in question, should have been asserted in the land department of the government, pending the application for patent, or by direct proceedings on the part of the government to vacate the patent. As long as the patent exists, it is conclusive evidence of title in the grantee, and his successors in interest, as against those not in privity with the government.

McKEE, J., dissented.