[No. 26059.   *En Banc.*   October 28, 1936.]

SILAS MASON, INC., *et al., Appellants,* v. THE STATE TAX COMMISSION *et al., Respondents.*[1]

*Graves, Kizer & Graves,* for appellants.

*The Attorney General* and *E. P. Donnelly, Assistant,* for respondents.

*Allen, Froude & Hilen, amicus curiae.*

GERAGHTY, J.—The question in this case is the power of the state of Washington to exact its occupation tax from the appellants in respect of the compensation received by them from the Federal government for the construction of the Grand Coulee dam and power plant.  The case is here on appeal from a judgment of the superior court denying injunctive relief against threatened proceedings by the respondents, members of the state tax commission, to enforce collection of the tax.

By contract, made September 17, 1934, with the United States, acting through the bureau of reclama-

[1]Reported in 61 P. (2d) 1269.

tion, the appellants, other than the Mason-Walsh-Atkinson-Kier Company, for a lump sum of approximately twenty-nine million dollars, engaged to construct the dam and power plant in accordance with plans and specifications therefor embodied in the contract by reference. The contract was awarded to the appellants upon competitive bids and after public notice of a call for tenders. The appellant Mason-Walsh-Atkinson-Kier Company was not a party to the contract but was formed by the contractors to have immediate charge of the work as their agent and representative in fulfilling the contract.

The appellants, both corporate and individual, are nonresidents of the state, and their sole business in the state is the prosecution of the work required by their contract.

As necessarily incidental to the prosecution of the contract, they conduct stores, mess-houses, and other commercial activities at the dam site for the convenience of the great number of employees engaged and their families, as well as all others of the public who have occasion to visit the works. As to these collateral activities, they are conforming to the state laws and paying such license, sales, and other taxes as are required by the state.

The challenged occupation tax is sought to be assessed against the appellants pursuant to chapter 191, Laws of 1933, p. 869 *et seq.*, as amended by chapter 57, Laws of 1933, Ex. Ses., p. 157 *et seq.*, providing:

"From and after the first day of January, 1934, and until the thirty-first day of July, 1935, there is hereby levied and there shall be collected from every person engaging or continuing within this state in the business of rendering or performing services, professional or otherwise, and from every person engaging or continuing within this state in any business not specifically taxable under section 2 of this act, an annual tax

or excise for the privilege of engaging in such business; as to such persons the amount of the tax or excise shall be equal to the gross income of the business multiplied by the rate of five-tenths of one per cent; . . . '' Laws of 1933, Ex. Ses., p. 157, § 1.

It was held in *Rainier Nat. Park Co. v. Henneford,* 182 Wash. 159, 45 P. (2d) 617, that, while the tax imposed by chapter 191 is an excise and not a property tax, it is in no sense a license tax and is not imposed as a prerequisite to entering into, or for the regulation of, business, but solely for revenue purposes.

The appellants contend that they are engaged in the work required by their contract as an instrumentality of the government of the United States and, as such, are immune from the occupation tax. The appellants also contend that their operations are conducted in territory exclusively occupied by the Federal government under cession of jurisdiction by the state, and that, by reason of this fact, the state laws are inoperative upon them. While reserving this second objection to the tax, the point is not argued in the appellants' briefs. However, the question is urged in a companion case and disposed of adversely to the appellants' contention. *Ryan v. State, post* 115, 61 P. (2d) 1276.

It is unnecessary to set out in any detail the provisions of the contract and specifications. It is enough to say, in so far as the fact is material, that while, under its terms, the Federal government reserves a large measure of supervisory control for the purpose of insuring proper standards of material and workmanship and a compliance with the policy of the government in respect of the conditions of labor, the appellants are independent contractors.

The principle upon which the immunity of Federal instrumentalities and agencies from state taxation rests is stated in *Railroad Co. v. Peniston,* 85 U.

S. (18 Wall.) 5, where, after referring to the rule often declared by that court that the taxing power of the state is one of its attributes of sovereignty, indispensable to its continued existence and not dependent upon the constitution of the United States or derived from that instrument, it is said:

"There are, we admit, certain subjects of taxation which are withdrawn from the power of the States, not by any direct or express provision of the Federal Constitution, but by what may be regarded as its necessary implications. They grow out of our complex system of government, and out of the fact that the authority of the National government is legitimately exercised within the States. While it is true *that* government cannot exercise its power of taxation so as to destroy the State governments, or embarrass their lawful action, it is equally true that the States may not levy taxes the direct effect of which shall be to hinder the exercise of any powers which belong to the National government."

In *Metcalf & Eddy v. Mitchell,* 269 U. S. 514, 46 S. Ct. 172, it is said that just what instrumentalities of either a state or the Federal government are exempt from taxation by the other, cannot be stated in terms of uniform application. Admittedly, those instrumentalities through which either government immediately and directly exercises its sovereign powers are immune from taxation by the other, and the court refers to illustrative instances in which the claim of immunity was upheld because the instrumentalities taxed were all so intimately connected with the necessary functions of government as to fall within the established exemption.

"When, however, the question is approached from the other end of the scale, it is apparent that not every person who uses his property or derives a profit, in his dealings with the government, may clothe himself with immunity from taxation on the theory that either he or his property is an instrumentality of government

within the meaning of the rule. *Thomson v. Pacific Railroad,* 9 Wall. 579; *Railroad Co. v. Peniston,* 18 Wall. 5; *Baltimore Shipbuilding Co. v. Baltimore,* 195 U. S. 375; *Gromer v. Standard Dredging Co.,* 224 U. S. 362, 371; *Fidelity & Deposit Co. v. Pennsylvania,* 240 U. S. 319; *Choctaw, O. & G. R. R. Co. v. Mackay,* 256 U. S. 531.

"As cases arise, lying between the two extremes, it becomes necessary to draw the line which separates those activities having some relation to government, which are nevertheless subject to taxation, from those which are immune. Experience has shown that there is no formula by which that line may be plotted with precision in advance. But recourse may be had to the reason upon which the rule rests, and which must be the guiding principle to control its operation. Its origin was due to the essential requirement of our constitutional system that the federal government must exercise its authority within the territorial limits of the states; and it rests on the conviction that each government, in order that it may administer its affairs within its own sphere, must be left free from undue interference by the other. *McCulloch v. Maryland* [4 Wheat. 316], *supra; Collector v. Day* [11 Wall. 113], *supra; Dobbins v. Commissioners of Erie County* [16 Pet. 435], *supra.* . . .

"But neither government may destroy the other nor curtail in any substantial manner the exercise of its power. Hence the limitation upon the taxing powers of each, so far as it affects the other, must receive a practical construction which permits both to function with the minimum of interference each with the other; and that limitation cannot be so varied or extended as seriously to impair either the taxing power of the government imposing the tax (*South Carolina v. United States,* 199 U. S. 437, 461; *Flint v. Stone Tracy Co., supra* [220 U. S. 107], at 172,) or the appropriate exercise of the functions of the government affected by it. *Railroad Co. v. Peniston, supra,* 31." *Metcalf & Eddy v. Mitchell, supra.*"

In that case, consulting engineers had been employed to advise states or their subdivisions with ref-

erence to proposed water supply and sewage disposal systems. They claimed exemption from the Federal income tax upon the portion of their net income earned through this public employment. Adverting to the principle that any taxation by one government of the salary of an officer or the public securities or an agency created and controlled by the other, is prohibited, the court continues:

"But here the tax is imposed on the income of one who is neither an officer nor an employee of government and whose only relation to it is that of contract, under which there is an obligation to furnish service, for practical purposes not unlike a contract to sell and deliver a commodity. The tax is imposed without discrimination upon income whether derived from services rendered to the state or services rendered to private individuals. In such a situation it cannot be said that the tax is imposed upon an agency of government in any technical sense, and the tax itself cannot be deemed to be an interference with government, or an impairment of the efficiency of its agencies in any substantial way."

In *Baltimore Shipbuilding & Dry Dock Co. v. Baltimore,* 195 U. S. 375, 25 S. Ct..50, where it was held that a state might tax the interest of a corporation in a dry dock which the United States had the right to use under a contract with the corporation, the court said:

"It seems to us extravagant to say that an independent private corporation for gain, created by a State, is exempt from state taxation, either in its corporate person, or its property, because it is employed by the United States, even if the work for which it is employed is important and takes much of its time."

In *Fidelity & Deposit Co. v. Pennsylvania,* 240 U. S. 319, 36 S. Ct. 298, a state tax on premiums collected by bonding insurance companies on surety bonds required of United States officials was held valid. It is said:

''But mere contracts between private corporations and the United States do not necessarily render the former essential government agencies and confer freedom from state control.''

*General Const. Co. v. Fisher,* 149 Ore. 84, 39 P. (2d) 358, 97 A. L. R. 1252, decided in December, 1934, is a case similar in its features to the present one. There, as here, a foreign corporation, qualified to do business in the state of Oregon, entered into a contract with the Federal government to furnish labor and material for the construction of the Owyhee dam and irrigation works in connection with the Owyhee irrigation project in Eastern Oregon. The work was done through the department of the interior, and the only net income received by the contractor from its operations in Oregon for the period involved was derived from the contracts with the United States government. The Oregon state tax commission exacted from the plaintiff large sums levied upon its income from its operations during several years. The taxes were paid under protest and to prevent levy being made on certain machinery and equipment necessarily used by the contractor in performing its contract with the United States government. Suit was brought to recover the amount of taxes so paid, the complaint alleging, as one of the grounds of attack upon the tax, that it was an unwarranted burden upon the functions of the Federal government. The trial court sustained a demurrer to the complaint, and a judgment was entered dismissing the action. On appeal to the supreme court of Oregon, the judgment of the trial court was affirmed.

The court held that, when the construction company, as an independent contractor, entered into a contract to perform labor for, and furnish material to, the Federal government, it did not thereby become a part, or an instrumentality, of the United States, and its prop-

erty, and its rights to conduct business within the state were not immune from taxation by the state wherein it was located in performing its contract, citing *Thompson v. Union Pac. R. Co.,* 76 U. S. (9 Wall.) 579, 19 L. Ed. 792; *Baltimore Shipbuilding & Dry Dock Co. v. Baltimore,* 195 U. S. 375, 25 S. Ct. 50; *Metcalf & Eddy v. Mitchell,* 269 U. S. 514, 46 S. Ct. 172; *Gromer v. Standard Dredging Co.,* 224 U. S. 362, 32 S. Ct. 499. Continuing:

"The property of plaintiff within the state of Oregon was subject to taxation by the state even though used in performing a contract with the federal government. The property thus being taxable, the privilege of using it for such purposes, based on the net income derived from its use is also taxable, whether called a property tax, a privilege tax, or an income tax. In the final analysis it all amounts to the same thing. It was the property of plaintiff that plaintiff alleges was to be taken for the tax.

"The principle of immunity from state or local taxation of the property and instrumentalities of the United States is generally based upon the direct ownership, or use and control of the property by the United States. Such immunity does not extend to the property of an independent contractor for gain even should it be used in carrying out a contract with the United States. The same principle obtains regarding taxation by the United States of incomes derived by persons and corporations from the state: *Metcalf v. Mitchell, supra.*"

Commenting on the contention made that the imposition of a tax tended to hamper and delay the Federal government in carrying out its contracts, the court said:

"Every tax levied has some remote tendency to interfere with the contractual relations between parties, but that is no reason why such parties should not contribute their just proportion to the expenses of maintaining the government from which they demand

protection for their property and privileges. In the instant case the work performed by plaintiff was undoubtedly let to the lowest responsible bidder. We cannot see how the tax complained of in any way impaired said contract or hindered the federal government in its governmental functions: . . ."

An appeal from the decision in that case to the supreme court of the United States was dismissed (*General Const. Co. v. Fisher*, 295 U. S. 715, 55 S. Ct. 646) upon the authority of *Trinityfarm Const. Co. v. Grosjean*, 291 U. S. 466, 54 S. Ct. 469; *Metcalf & Eddy v. Mitchell*, 269 U. S. 514, 46 S. Ct. 172; *Lucas v. Howard*, 280 U. S. 526, 50 S. Ct. 87; *Lucas v. Reed*, 281 U. S. 699, 50 S. Ct. 352; *Alward v. Johnson*, 282 U. S. 509, 514, 51 S. Ct. 273, 75 A. L. R. 9; *Willcuts v. Bunn*, 282 U. S. 216, 224, *et seq.*, 51 S. Ct. 125, 71 A. L. R. 1260; and *Baltimore Shipbuilding & Dry Dock Co. v. Baltimore*, 195 U. S. 375, 382, 25 S. Ct. 50.

In *Six Cos. v. De Vinney*, 2 Fed. Supp. 693, the plaintiff, contractor on Boulder dam and power plant, sought to enjoin the collection of taxes levied by the state of Nevada upon its personal property and poll taxes alleged to be due from its employees, claiming to be an instrumentality of the United States and, as such, not subject to the revenue laws of the state. Holding against the plaintiff's contention, Norcross, district judge, said:

"The case of a corporation contractor for the construction of public works is one in which, if it may be said to be an instrumentality of the government, its relations to the government are nevertheless purely contractual. It does not exercise governmental functions. It undertakes to construct according to plans and specifications adopted by officials of the government. It is organized for that and similar purposes and its primary object is to comply with the conditions of the contract for the profit to be made in so complying. In the case of *Clallam County v. United States*,

263 U. S. 341, 44 S. Ct. 121, 68 L. Ed. 328, the court held that 'the Spruce Production Corporation was organized by the United States as an instrumentality for carrying on the war,' and said: 'This is not like the case of a corporation having its own purposes as well as those of the United States and interested in profit on its own account.' ''

In the case before us, while it is a fact that the appellants are, for the time, performing no work within the state other than that covered by their contract with the Federal government, they are in no sense creatures of the government, nor brought in by the government especially for the work. The parties to the contract are general contractors engaged in contracting throughout the United States, and the two corporate contractors have qualified themselves to do business in the state of Washington.

In *State v. Wiles,* 116 Wash. 387, 199 Pac. 749, 18 A. L. R. 1163, Wiles had entered into a written contract with the United States government whereby he agreed to carry the United States mail in the city of Seattle between the various depots, wharves, docks, postoffice, and substations, and for the purposes of the contract, he used motor trucks. He was required to provide vehicles for the carriage of the mail and to keep them properly equipped and repaired. Under the contract, the trucks were to be used only in the business of carrying the United States mail. Refusing to obtain a license authorizing the operation of his trucks, he was convicted of operating trucks upon the highways of King county without a license, as required by the state laws. On his appeal to this court, the appellant contended that he was an instrumentality selected by the government in the performance of its governmental functions and, as such, was immune from the obligation to obtain and pay for a license; that, since he was doing for the government what it might do for

itself, to impose a tax upon him would be, in effect, to impose it upon the government, because any private person carrying mail would necessarily require the government to pay him an additional amount equal to the tax. Commenting on this contention and the authorities urged in support of it, the court said:

"Here there is no effort to tax the business of carrying the mail. The appellant is not a direct instrumentality of the government; he is a personal contractor, doing certain work for the government, at a fixed compensation. In no sense is he the representative or agent of the government nor an integral part of it. . . .

"A person building a state road is nothing but a contractor; he is no part of the state or its agencies, and does not thereby inherit the various immunities of the state. There is nothing in appellant's contract which indicates that the government intended to pass its immunities on to him. Under these circumstances it should be presumed that it was the intention that he should be subject to the general laws of the state."

Deducing the rule from the authorities cited, we said:

"While it is true, generally speaking, that a state may not by its laws hamper and interfere with the free and orderly performance of governmental functions, by taxation or otherwise, yet that interference must be substantial and direct. Every indirect and immaterial interference with the conduct of government business is not violative of the principles upon which the Federal government is founded and performs its duties. The rule of reason must control in all such questions, otherwise the states will be greatly hampered in the conduct of their affairs, without any correspondent benefit flowing to the national government."

The appellants cited *Panhandle Oil Co. v. Mississippi ex rel. Knox*, 277 U. S. 218, 48 S. Ct. 451, 56 A. L. R. 583, and *Graves v. Texas Co.*, 298 U. S. 393, 56 S. Ct. 818. These cases involve a tax on the sale of gasoline

to the United States and are alike in principle. In the latter case, the state of Alabama levied an excise tax of six cents a gallon upon storers of gasoline, accruing at the time of withdrawal from storage. This tax was challenged by corporations storing and selling to the United States large quantities of gasoline required by it for its governmental uses and delivered pursuant to written contract. There was some contention that the law was one taxing mere storage and not sale. The Court was of the opinion that storing alone was not intended to be taxed, but, assuming that by the acts under consideration, the state meant to tax mere storing, the court held that that purpose could not be given effect in respect of the company's sales and deliveries to the United States without infringing the constitutional principle which safeguarded the Federal government against state taxes.

"Plainly, the sales and deliveries by the company to the United States necessarily include storing and withdrawal from storage. A tax upon anything so essential to the sale of the gasoline to the United States is as objectionable as would be a tax upon the sale itself. The validity of the tax is to be determined by the practical effect of enforcement. To apply any other test of constitutionality would be to treat 'a prohibition which is general, as if it were confined to a particular mode of doing the forbidden thing.' *Brown v. Maryland,* 21 Wheat. 419, 444, 6 L. ed. 678, 687. As held in the *Panhandle Oil Co.* case (277 U. S. 218, 222, 48 S. Ct. 451, 452, 72 L. ed. 858, 56 A. L. R. 583): 'A charge at the prescribed rate is made on account of every gallon acquired by the United States. It is immaterial that the seller and not the purchaser is required to report and make payment to the State. . . . The amount of money claimed by the State rises and falls precisely as does the quantity of gasoline so secured by the government. It depends immediately upon the number of gallons.' So far as concerns the federal immunity from state taxation, a tax upon storing or withdrawal

so involved cannot be distinguished from the tax on sales imposed by the Mississippi statute condemned as unconstitutional.''

In our opinion, there is a vital distinction between the *Graves* and the *Panhandle Oil Co.* cases and the present case. There, the tax of so many cents per gallon was exacted upon every gallon that left the storage for delivery to the United States. The tax was on the sale to the government and was direct and immediate. Here, the occupation tax is but one of numerous incidental expenses necessarily inhering in the qualification of the contractors to perform the work for the government.

The case of *Trinityfarm Construction Co. v. Grosjean*, 291 U. S. 466, 54 S. Ct. 469, involved a tax of five cents per gallon levied upon gasoline by the state of Louisiana. A contractor with the Federal government for the construction of levees in Louisiana, to control the waters of the Mississippi river, challenged the right of that state to exact the gallonage tax on gasoline purchased and used by the contractor in performing its contract with the Federal government. In upholding the tax, the court said:

''The power granted by the commerce clause is undoubtedly broad enough to include construction and maintenance of levees in aid of navigation of the Mississippi River, and to authorize the performance of the work directly by government officers and employees or pursuant to contracts such as those awarded to appellant. The latter method was chosen and the validity of the challenged tax is to be tested on that basis. It is not laid upon the choice of means, the making of the contracts, the contracts themselves, or any transaction to which the federal government is a party or in which it is immediately or directly concerned. Nor is the exaction laid or dependent upon the amounts, gross or net, received by the contractor. The exaction in respect of its relation to the federal undertaking is

wholly unlike those considered in *Choctaw, O. & G. R. Co. v. Harrison,* 235 U. S. 292; *Indian Oil Co. v. Oklahoma,* 240 U. S. 522; and *Gillespie v. Oklahoma,* 257 U. S. 501. Appellant is an independent contractor. *Casement v. Brown,* 148 U. S. 615, 622. It is not a government instrumentality. Cf. *Metcalf & Eddy v. Mitchell,* 269 U. S. 514. *Group No. 1 Oil Corp. v. Bass,* 283 U. S. 279. Unquestionably, as appellant here concedes, Louisiana is free to tax the machinery, storage tanks, tools, etc., that are used for the performance of the contracts. These things are as closely connected with the work as is the gasoline in respect of which is laid the excise in question. There is no room for any distinction between the plant so employed and the gasoline used to generate power. If the payment of state taxes imposed on the property and operations of appellant affects the federal government at all, it at most gives rise to a burden which is consequential and remote and not to one that is necessary, immediate or direct. *Thomas v. Gay,* 169 U. S. 264, 275. *Metcalf & Eddy v. Mitchell, supra,* 524 *et seq. Wheeler Lumber Co. v. United States,* 281 U. S. 572, 579. Appellant's claim of immunity is without foundation.''

This case, contrasted with *Graves v. Texas Co.,* and the *Panhandle Oil Co.* case, illustrates, we think, the distinction in principle involved. In the *Graves* case, the tax was laid upon the direct sale to the government. In the *Trinityfarm Const. Co.* case, a like tax was paid by the contractor, but the sale was not made directly, or in effect, to the Federal government. It was argued that the tax inhered in the cost of the work performed by the contractor and, therefore, affected the governmental operations as effectively as if the gasoline had been actually sold to the government. But the court brushed this contention aside by saying that the tax was not laid upon the choice of means, the making of the contracts, the contracts themselves, or any transaction to which the Federal government was

a party or in which it was immediately or directly concerned.

And so, in the present case, the means chosen by the government for building the dam and power plant was by contract, rather than the doing of the work directly by its own officers or agencies.

In *Weston v. City Council of Charleston*, 2 Peters 449, the city of Charleston had levied a tax on "six and seven per cent. stock of the United States." In holding the tax void as an unauthorized imposition upon an instrumentality of the Federal government, Chief Justice Marshall used this language:

"It is admitted by the counsel for the defendants, that the power to tax stock must affect the terms on which loans will be made; but this objection, it is said, has no more weight when urged against the application of an acknowledged power to government stock, than if urged against its application to lands sold by the United States.

"The distinction is, we think, apparent. When lands are sold, no connexion remains between the purchaser and the government. The lands purchased become a part of the mass of property in the country with no implied exemption from common burdens. All lands are derived from the general or particular government, and all lands are subject to taxation. Lands sold are in the condition of money borrowed and repaid. Its liability to taxation in any form it may then assume is not questioned. The connexion between the borrower and the lender is dissolved. It is no burden on loans, it is no impediment to the power of borrowing, that the money, when repaid, loses its exemption from taxation. But a tax upon debts due from the government stands, we think, on very different principles from a tax on lands which the government has sold. . . .

"The tax on government stock is thought by this Court to be a tax on the contract, a tax on the power to borrow money on the credit of the United States,

and consequently to be repugnant to the Constitution.''

We have here an early recognition of the distinction we are making between the cases of *Graves v. Texas Co., supra,* and *Trinityfarm Const. Co. v. Grosjean, supra.* The tax was on the contract to repay money borrowed. After the borrowed money was repaid to the lender, the government was no longer concerned or affected. Here, the government, by its contract, agreed to pay the contractors a lump sum for the rendition of specified services. When the money is earned and paid to the contractor and becomes a part of his gross earnings, the Federal government is no longer concerned with what he may be required to pay as a tax upon the privilege of doing business in this state, no more so than it was concerned in the amount of the tax paid upon gasoline, by the contractor, in building the Mississippi river levees.

In *Railroad Co. v. Peniston,* 85 U. S. 5, *supra,* the Union Pacific Railway, a corporation chartered by Congress, sought by reason of the source of its incorporation and certain services agreed to be rendered to the government of the United States, to avoid taxes levied upon its property by one of the counties of the state of Nebraska. The court, in upholding the tax, pointed out that, as it was levied on the property of the railroad only, it did not affect its capacity to render whatever governmental services it owed the government. In a dissenting opinion, Justice Bradley, after contending that the rule established in *McCulloch v. Maryland,* 4 Wheat. 316, and other cases following it, should be applied, makes this significant concession to the prevailing opinion:

''The case differs *toto coelo* from that wherein the government enters into a contract with an individual or corporation to perform services necessary for

carrying on the functions of government—as for carrying the mails, or troops, or supplies, or for building ships or works for government use. In those cases the government has no further concern with the contractor than in his contract and its execution. It has no concern with his property or his faculties independent of that. How much he may be taxed by, or what duties he may be obliged to perform towards, his State is of no consequence to the government, so long as his contract and its execution are not interfered with. In that case the contract is the means employed for carrying into execution the powers of the government, and the contract alone, and not the contractor, is exempt from taxation or other interference by the State government.''

Our conclusion is that the trial court correctly held appellants liable for payment of the challenged tax, and its judgment denying injunctive relief is, accordingly, affirmed.

ALL CONCUR.