[No. 33024.   Department Two.   April 1, 1955.]

COLUMBIA RIVER BRIDGE COMPANY, *Respondent*, v. THE
STATE OF WASHINGTON, *Appellant*.[1]

[1]Reported in 282 P. (2d) 283.

*The Attorney General* and *Keith Grim, Assistant*, for appellant.

*Keith, Winston & Repsold* and *E. Lawrence White*, for respondent.

MALLERY, J.—The plaintiff's predecessor in interest constructed a bridge over the Columbia river between Hood River county, Oregon, and Skamania county, Washington, and plaintiff maintains and operates it under authority of an act of Congress. It charges tolls for pedestrian and vehicular traffic. The users of the bridge who are engaged in commerce at all, are in *interstate* commerce. Tolls are fixed by the secretary of war in the exercise of the Federal government's authority over navigable streams.

Upon demand of the state tax commission, plaintiff paid an excise tax of $632.22 in compliance with RCW 82.16.020 [*cf.* Rem. Rev. Stat. (Sup.), § 8370-36], the amount being computed at the rate therein prescribed *upon one half of the gross tolls* collected for the period from February 18, 1953, to June 30, 1953, inclusive.

Plaintiff brought this action for the recovery of the tax. The trial court gave judgment for the plaintiff upon the grounds (1) that there is no statutory authority under which defendant is permitted to tax *one half* of the gross operating revenue of plaintiff, and (2) that the tax constituted a direct burden upon interstate commerce in violation of Art. I, § 8, of the constitution of the United States. The defendant appeals.

(1) RCW 82.16.050 [*cf.* Rem. Supp. 1949, § 8370-40] provides, *inter alia:*

"In computing tax there may be deducted from the gross operating revenue the following items:  . . .

"(6) Amounts derived from business which the state is prohibited from taxing under the Constitution of this state or the Constitution or laws of the United States;  . . ."

The appellant recognizes that it is prohibited from levying an *ad valorem* tax upon the physical part of the bridge within the state of Oregon, or a utility tax upon the revenue of the business attributable to that part of the bridge. Hence, under the statute taxing the gross revenue of utilities, there must be deducted from the total gross tolls collected by respondent that part of them attributable to the Oregon portion of the bridge, in order to find the taxable part attributable to the Washington part of the bridge.

The administrative determination of the portion of the gross tax attributable to the Washington part of the bridge, is subject to attack by the taxpayer. Respondent has a speedy and adequate remedy, if it is aggrieved by the percentages of the apportionment as it has been made. See *Crown Zellerbach Corp. v. State*, 45 Wn. (2d) 749, 278 P. (2d) 305.

■ Respondent does not question the fairness of the apportionment, but instead, contends that the tax cannot be apportioned at all, for the reason that the toll-bridge business "is a unitary thing and must all be taxed or none at all." We do not agree. In traversing the bridge, one first utilizes a part of the bridge within one taxing authority, and then the part that is within another. The parts of the bridge do not overlap any more than the states do, and the parts must be traversed consecutively, not simultaneously. Neither state can tax all of the bridge or all of its revenue, but a proper apportionment between them can be ascertained by reference to the states' common boundary where it is crossed by the bridge.

■ (2) The public utility tax is not a license tax imposed as a prerequisite to entering into business or for its regulation. *Rainier Nat. Park Co. v. Henneford*, 182 Wash. 159, 45 P. (2d) 617. The tax is imposed solely for revenue purposes. *Silas Mason, Inc. v. State Tax Comm.*, 188 Wash. 98, 61 P. (2d) 1269.

■ The respondent is not engaged in interstate commerce. The tax in question is not a direct pass-on tax limited to those engaged in interstate commerce, but is levied

upon the company's gross revenue for the privilege of engaging in the toll-bridge business within the state of Washington, without regard to the nature or business of its customers. See *Henderson Bridge Co. v. Kentucky,* 166 U. S. 150, 41 L. Ed. 953, 17 S. Ct. 532; *Detroit International Bridge Co. v. Corporation Tax Appeal Board of Michigan,* 294 U. S. 83, 79 L. Ed. 777, 55 S. Ct. 332.

As was said in the *Henderson* case, *supra:*

"Clearly the tax was not a tax on the interstate business carried on over or by means of the bridge, because the bridge company did not transact such business. That business was carried on by the persons and corporations which paid the bridge company tolls for the privilege of using the bridge."

■ Respondent contends the secretary of the army will increase the tolls because of the tax, and it thus will become a burden upon interstate commerce. To claim that the tax burdens interstate commerce avails respondent nothing, for state taxes which concededly burden such commerce have been many times sustained. *Western Live Stock v. Bureau of Revenue,* 303 U. S. 250, 82 L. Ed. 823, 58 S. Ct. 546, 115 A. L. R. 944; *McGoldrick v. Berwind-White Coal Mining Co.,* 309 U. S. 33, 84 L. Ed. 565, 60 S. Ct. 388, 128 A. L. R. 876; *Interstate Oil Pipe Line Co. v. Stone,* 337 U. S. 662, 93 L. Ed. 1613, 69 S. Ct. 1264. As was said in *Braniff Airways, Inc. v. Nebraska State Board of Equalization & Assessment,* 347 U. S. 590, 98 L. Ed. 967, 74 S. Ct. 757:

"We have frequently reiterated that the Commerce Clause does not immunize interstate instrumentalities from all state taxation, but that such commerce may be required to pay a nondiscriminatory share of the tax burden."

In *Western Live Stock v. Bureau of Revenue, supra,* at p. 254, it states:

"It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business. 'Even interstate business must pay its way,' *Postal Telegraph-Cable Co. v. Richmond,* 249 U. S. 252, 259; *Ficklen v. Shelby County Taxing Dist.,* 145 U. S. 1, 24; *Postal Telegraph Cable Co. v. Adams,* 155 U. S. 688, 696; *Galveston, H. & S. A. Ry. Co. v. Texas,* 210 U. S. 217, 225,

227, and the bare fact that one is carrying on interstate commerce does not relieve him from many forms of state taxation which add to the cost of his business."

It is only a discriminatory tax levied upon interstate commerce, and not upon intrastate commerce, that is in violation of Art. I, § 8, of the constitution of the United States.

■ The respondent contends that the tax in question is a tax upon its Federal franchise. It says:

"The ultimate question, then, is whether the State of Washington can lay a gross proceeds tax on the privilege of exercising a federal franchise. This question, we submit, must be answered in the negative."

The act of Congress authorizing respondent to construct, maintain, and operate a toll bridge over the Columbia river is not a Federal franchise conferring immunity from state taxation. As was said in *Arkansas & Memphis R. Bridge & Terminal Co. v. State*, 174 Ark. 420, 295 S. W. 378:

"If the authority to build the bridge granted by Congress can be called a franchise at all, it is not a primary franchise, but a secondary. The act granting authority to build the bridge expressly states that the bridge company is a Tennessee corporation, and grants the authority to build the bridge to a corporation already created under the laws of the State of Tennessee. The same requirement would have been necessary for any person who desired to build a bridge across a navigable stream, whether the stream was between two states or wholly within one State. The grant of authority is necessary in all cases where a bridge is built across a navigable stream, and it is just as necessary where there is no interstate commerce passing over the bridge as where it is between two states and all the commerce going over it is interstate. It is merely permission and authority necessary to be granted because the stream is navigable, and the tax here is not in any sense a tax on a Federal franchise and is not a burden on interstate commerce. The bridge company is not engaged in commerce."

The reason why authority of Congress to build the bridge is not a Federal franchise, which grants immunity from state taxation, is because it does not make the respondent an agent of the Federal government, nor convert the bridge into a Federal instrumentality for the accomplishment of a

governmental function. As was said in *Fox Film Corp. v. Doyal*, 286 U. S. 123, 76 L. Ed. 1010, 52 S. Ct. 546:

"The principle of the immunity from state taxation of instrumentalities of the Federal Government, and of the corresponding immunity of state instrumentalities from Federal taxation—essential to the maintenance of our dual system—has its inherent limitations. It is aimed at the protection of the operations of government (*McCulloch v. Maryland*, 4 Wheat. 316, 436), and the immunity does not extend 'to anything lying outside or beyond governmental functions and their exertions.' *Indian Motorcycle Co. v. United States*, 283 U. S. 570, 576, 579. Where the immunity exists, it is absolute, resting upon an 'entire absence of power' (*Johnson v. Maryland*, 254 U. S. 51, 55, 56), but it does not exist 'where no direct burden is laid upon the governmental instrumentality, and there is only a remote, if any, influence upon the exercise of the functions of government.' *Willcuts v. Bunn*, 282 U. S. 216, 225."

The judgment is reversed.

HAMLEY, C. J., HILL, WEAVER, and ROSELLINI, JJ., concur

---

May 26, 1955. Petition for rehearing denied.